**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LESLIE MANGENE,**

                     **Plaintiff,**

v.                                                   **1:19-cv-1216**

**LOUIS DEJOY,[1] POSTMASTER GENERAL,**
**U.S. POSTAL SERVICE,**

                     **Defendant.**

_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


### DECISION and ORDER

**I.   INTRODUCTION**

Plaintiff Leslie Mangene, an employee of the U.S. Postal Service (USPS), brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., alleging that she suffered a hostile work environment on the basis of her sexual orientation. *See generally* Compl., Dkt. No. 1.[2]  Defendant Louis DeJoy moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint. *See* Dkt. No. 15. Plaintiff

---

[1]Louis DeJoy was appointed Postmaster General on June 15, 2020. Accordingly, by operation of Fed. R. Civ. P. 25(d), Postmaster DeJoy is automatically substituted for Postmaster Megan J. Brennan. The Court Clerk is respectfully directed to amend the docket to reflect this substitution.

[2]Plaintiff filed her Complaint on September 30, 2019. Dkt. No. 1. On October 8, 2019, the Supreme Court of the United States heard oral argument on the issue of whether discrimination based on "sex" under Title VII covered homosexual and transgender individuals. *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020). Since Plaintiff's Complaint was based on alleged discrimination based on sexual orientation under Title VII, at the request of the parties, the Court agreed to stay this case until the Supreme Court decided *Bostock*. Dkt. No. 12.

opposes the motion, Dkt. No. 15, and Defendant files a reply. Dkt. No. 17. For the reasons that follow, the motion is granted and Plaintiff is granted leave to file an amended complaint.

## II.  STANDARD OF REVIEW

In adjudicating a Rule 12(b)(6) motion against a plaintiff represented by counsel, as is the circumstance here, "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)(internal quotation marks omitted). The Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted). This tenet does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ... are not entitled to the assumption of truth." *Id.; see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(stating that a court is "not bound to accept as true a legal conclusion couched as a factual allegation").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d

2

Cir. 2007)(quoting *Twombly*, 550 U.S. at 570); *see Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012)( Plausibility is "a standard lower than probability."). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Id.* (citing Twombly, 550 U.S. at 555). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

### III. BACKGROUND

#### a. Factual

At the time Plaintiff filed her Complaint, she had been employed by the USPS for nineteen years, including six as a custodian. Compl. ¶ 11. Plaintiff identifies sexually as a lesbian and is in a same-sex relationship. *Id.* ¶ 12. In the spring of 2016, Plaintiff was assigned to clean the Empire State Plaza (ESP) Post Office as part of her duties. *Id.* ¶ 13. At each facility that Plaintiff is assigned to clean, she is allotted a specific amount of time to complete her tasks based upon a standard, pre-determined time for each item on her checklist. *Id.* ¶ 14. Plaintiff was allotted less than an hour to clean the ESP Post Office. *Id.* ¶ 15. Plaintiff believes that there were no complaints about her job performance or the overall cleanliness of the building during the first year that she cleaned the ESP Post Office. *Id.* ¶ 16.

Plaintiff alleges that at some unspecified point in time before April 2017, two USPS

3

mail clerks, Cheri Martinez (Martinez) and Carmella Axtman (Axtman), discovered that she was a lesbian. *Id.* ¶ 17. Plaintiff claims that at some time "in or around April of 2017," Martinez and Axtman "began complaining about the cleanliness of the ESP Post Office to Plaintiff and supervisors." *Id.* ¶ 18. She asserts that "[t]here were no changes in Plaintiff's cleaning methods, routine, or checklist as it pertained to her duties at ESP Post Office between the spring of 2016 and April of 2017." *Id.* ¶ 19. Plaintiff maintains that Martinez and Axtman's "daily complaints regarding the alleged lack of cleanliness and Plaintiff's alleged failure to perform her duties were directed to humiliate Plaintiff and to threaten her continued employment with Defendant." *Id.* ¶ 20. "Feeling that [Martinez and Axtman] were teaming up on her and that there was no end in sight to their baseless complaints, Plaintiff notified her supervisor that the harassment was having a negative impact on her ability to perform her work." *Id.* ¶ 21.

"[I]n February of 2018, while the aforementioned complaints were continuing, Plaintiff arrived to the ESP Post Office one day to find cigarette butts and sunflower seeds spread all over the floor." *Id.* ¶ 22. "Plaintiff made note of the event as smoking was not permitted in either the Empire State Plaza or the ESP Post Office." *Id.* ¶ 23. "Seeing this as a continued sign of harassment, Plaintiff reported the incident to her supervisor." *Id.* ¶ 24. Plaintiff believes that her supervisor at the time, Ron Renkawitz, took no action to investigate the incident "or to mitigate the Plaintiff's concerns of the continued harassment" by Martinez and Axtman. *Id.* ¶ 25.

"Thereafter, beginning in March of 2018, additional trash incidents became routine at the ESP Post Office." *Id.* ¶ 26. "Initially, Plaintiff discovered that trash was being thrown

4

into the bottom of the receptacle, underneath the liner. In other words, one would have to remove the liner, throw away trash and then replace the liner." *Id.* ¶ 27. Shortly thereafter, "Plaintiff noticed that trash was no longer being placed in receptacles at all. Instead, the trash was just being dropped on the floor." *Id.* ¶ 28. Additionally, "Plaintiff began to notice that trash, including latex gloves, were being shredded and then thrown indiscriminately on the floor." *Id.* ¶ 29. "Plaintiff reported the above incidents to her supervisor Ron Renkawitz and then to his successor, Diane Travis, and each time informed them that the harassment was continuing to get worse, and that it made her feel threatened." *Id.* ¶ 30. Plaintiff believes that neither Mr. Renkawitz nor Ms. Travis "ever took any action to investigate the incidents or to mitigate the Plaintiff's continued concerns of harassment and threatening behavior by" Martinez and Axtman. *Id.* ¶ 31.

"Despite the fact that she was still being assigned to clean the ESP Post Office, Plaintiff attempted to perform her duties before [Martinez and Axtman] arrived in the morning." *Id.* ¶ 32. "Yet, even with the reduced lack of [sic] direct interaction, Plaintiff was still experiencing the same harassing behavior and in many respects it got worse." *Id.* ¶ 33. "Soon after Plaintiff re-arranged her schedule to avoid direct interaction[] with the ESP Post Office staff, Plaintiff began to notice that notes were being left for her including disparaging comments that were being written into the loading dock floor." *Id.* ¶ 34. "Additionally, due to Plaintiff's required attendance at mandatory meetings, there would be occasions where Plaintiff had to report to the ESP Post Office during work hours thereby subjecting herself to the direct harassment of the now emboldened staff of the ESP Post Office." *Id.* ¶ 35. Plaintiff asserts that each time she "would be forced to show up

5

during work hours," Martinez and Axtman "would berate her out loud and in front of customers and other staff. They even developed a slang name for Plaintiff, referring to her as 'Pablo' and using it in a derogatory and demeaning manner." *Id.* ¶ 36; *see id.* ¶ 47.[3] "Plaintiff once again reported the ongoing issues to her supervisor." *Id.* ¶ 37. However, "[d]espite reporting the ongoing harassment to her supervisor and informing her supervisor that it was causing her to experience elevated anxiety which was having a negative impact on her health, no action was taken to investigate, alleviate, or in any manner address the harassment." *Id.* ¶ 38.

Plaintiff asserts that in addition to continuing to harass her, "at some point in February of 2019," Axtman tripped on a rug in the ESP Post Office and blamed it on Plaintiff, "complaining to both of their supervisors that the floors were too dirty and the rug was not properly secured to the floor." *Id.* ¶ 39. Plaintiff asserts that "days after" Axtman's complaint, "Plaintiff's supervisor at the time, Dennis Vanwie, and Mr. Vanwie's supervisor, Matthew Carter, conducted a site inspection of the ESP Post Office and determined that it was being properly cleaned." *Id.* ¶ 40.

Plaintiff asserts that "[t]he continuous harassment that Plaintiff was subjected to on a daily basis along with the fact that Defendant dismissed and ignored her pleas for help

---

[3]In Plaintiff's First Cause of Action, she asserts:

In addition to making false accusations about Plaintiff's quality of work, the continuous conduct of purposefully making tedious messes for the Plaintiff to clean up within her allotted timeframe, and the derogatory name calling which appears to imply that Plaintiff resembled a Latin-American man, is further demonstration of how the actions interfered with Plaintiff's work performance and altered the conditions of employment for the worse.

Compl. ¶ 47. The Court presumes that the derogatory name calling implying that Plaintiff resembled a Latin-American man is in reference to the "slang name" "Pablo" that Martinez and Axtman called Plaintiff.

caused Plaintiff to suffer from extreme anxiety and emotional distress which limited Plaintiff's physical ability to perform her job." *Id.* ¶ 41.  Plaintiff contends that this caused her "to miss over 400 hours of work," *id*. ¶ 42, and, "in addition to using up her sick time and vacation time, Plaintiff was forced to take leave without pay for roughly 300 hours of time in which she could not physically perfonn her work due to Defendant's failure to address the workplace harassment she was subjected to."  *Id.* ¶ 43.

### b. Procedural

On March 5, 2019, Plaintiff initiated an informal Equal Employment Opportunity (EEO) complaint "for discrimination." *Id.* ¶ 6.  In a letter dated May 31, 2019, Plaintiff was notified that a limited inquiry had been completed, informing her of management's response to her claims of discrimination, and notifying her of the right to file a formal EEO Complaint. Def. Ex. B, Dkt. No. 14-4, at 2-3; *see also* Compl. ¶ 7.

On June 13, 2019, Plaintiff submitted a formal EEO Complaint detailing her allegations of harassment. *See* Def. Ex. A, Dkt. No. 15-3; *see also* Compl. ¶ 8.  Therein, Plaintiff stated: "I feel over the course of the last year and a half I've been being harassed continually started [sic] around 04/19/17.  They are saying I'm not doing my job and now Oct/Nov are writing on the floor at the ESP Post Office." Def. Ex. A, at 7.  Plaintiff's formal EEO Complaint does not mention her sexual orientation or indicate the mail clerks' conduct was motivated by discriminatory animus because of Plaintiff's sexuality. *Id.*  The only reference to the possibility that Plaintiff perceived that her sexual orientation was a cause of her co-worker's complaints is Plaintiff's comment that the mail clerks called her "Pablo," a nickname she interpreted to be "gender indentity" [sic]. *Id.*

7

In support of her claim, Plaintiff attached various photographs to her EEO Complaint, purportedly of the messages she found at the ESP Post Office. *Id.* Those photographs show various messages rubbed into a dirty floor, stating: "Clean Me," *id.* at 16; "Hello Please Clean Me" and "Hello Please Clean Me Now," *id.* at 18-19; one that appears to say "O Help Hi," *id.* at 20; an indecipherable message with an arrow pointing to "Hi," *id.* at 21, and "Pablo," *id.* at 22. In her formal EEO Complaint, Plaintiff stated that this was "graffiti" which violated USPS policy. *Id.* at 7. As part of her EEO Complaint, Plaintiff also submitted photos of a dirty ashtray (*id.* at 23) and a trash receptacle without a plastic bag liner (*id.* at 14). In her formal EEO Complaint, Plaintiff states that she reported these incidents to various USPS supervisors: Matt Carter, Diane Travis, and Ron Renkawitz. *Id.* at 8. Plaintiff does not state in her formal EEO Complaint that she told these supervisors she was gay and believed that the conduct was discriminatory harassment based on her sexual orientation. *Id.* Plaintiff claims that Mr. Renkawitz told her to clean the ESP Post Office first thing in the morning so she did not need to interact with the USPS mail clerks. *Id.* Plaintiff's formal EEO Complaint was dismissed on or about July 2, 2019. *See* Compl. ¶ 9; Def. Ex. C, Dkt. No. 15-5. This action followed.

Plaintiff's Complaint contains three causes of action: the first alleges that Plaintiff suffered daily harassment that amounted to a hostile work environment, Compl. ¶¶ 44-50; the second alleges that despite being made aware of the hostile work environment, Plaintiff's employer did not take action to correct it, *id.* ¶¶ 51-54; and the third alleges that Plaintiff experienced "extreme and emotional distress" which negatively impacted her health and caused her to miss work." *Id.* ¶¶ 55-58. As Defendant contends, Plaintiff

8

essentially pleads the elements of a hostile work environment claim as three separate causes of action. *See, e.g., Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001) *as amended* (Apr. 20, 2001); *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002).

### III. DISCUSSION

Assuming, *arguendo*, that Martinez and Axtman harassed Plaintiff by the acts alleged and that they did so because of Plaintiff's sexual orientation, and assuming further that their harassment was more than episodic and rose to a level of severity or pervasiveness such to create an objectively hostile or abusive work environment, the Complaint does not assert that either Martinez or Axtman were Plaintiff's supervisors. Under these circumstances, to set forth a plausible hostile work environment claim against the USPS, Plaintiff must demonstrate that supervisory personnel were aware of sexual orientation-based conduct by her peers, yet failed to act appropriately to remedy the situation. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998) (to impute liability to an employer for a hostile work environment created by co-workers, rather than supervisors, a plaintiff must establish that the employer knew, or reasonably should have known, of the conduct, but failed to take appropriate remedial action). To prevail on her hostile work environment claim, Plaintiff must demonstrate that the USPS either: (1) "failed to provide a reasonable avenue for [her] complaint"; or (2) "knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009) (*quoting Howley v. Town of Stratford,* 217 F.3d 141, 154 (2d Cir. 2000)(internal quotation marks omitted)).

9

As Defendant argues, the federal Complaint establishes that the USPS provided Plaintiff with an appropriate procedural mechanism for her EEO Complaint. *See generally*, Compl.  Plaintiff admits that she initiated an informal EEO Complaint and the USPS EEO Counselor notified her of her right to file a formal EEO Complaint. *Id.* ¶¶ 6–7.  Plaintiff further acknowledges that she filed a formal EEO Complaint, which the USPS considered and ultimately dismissed. *Id.* ¶¶ 8–9.  In light of this reasonable avenue for complaint, Plaintiff can only prevail on a claim against the USPS if she pleads facts suggesting that the USPS "knew, or in the exercise of reasonable care should have known, about the [discriminatory] harassment yet failed to take appropriate remedial action." *Duch,* 588 F.3d at 762.

Plaintiff alleges that she reported the "trash incidents" and "ongoing issues" with Martinez and Axtman to her supervisors. Compl. ¶¶ 26–30.  However, she does not allege that she ever communicated to a supervisor that she believed that the incidents were motivated by discrimination on the basis of her sexual orientation.  While Plaintiff asserts in an affidavit she filed in opposition to defendant's motion that she made this representation to her supervisor, *see* Mangene Aff., Dkt. No. 16, ¶ 23, Plaintiff cannot amend her Complaint through opposition to a motion to dismiss. *See Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir. 1998)(complaint cannot be amended to add new factual allegations in opposition to motion to dismiss)*; Edwards v. Thomson Reuters (Tax & Accounting) Inc.*, 2020 WL 2132348, at *4 (S.D.N.Y. May 5, 2020) ("It is well settled that a plaintiff cannot amend her complaint in response to a motion to dismiss.")(citing *Williams v. Rosenblatt Sec. Inc.*, 136 F. Supp.3d 593, 609 (S.D.N.Y. 2015) (collecting cases) and

10

*Uddoh v. United Healthcare*, 254 F. Supp. 3d 424, 429 (E.D.N.Y. 2017)("A plaintiff ... is not permitted to interpose new factual allegations or a new legal theory in opposing a motion to dismiss")).

Because the Complaint does not allege that Plaintiff notified supervisory personnel that the harassment that she complained of was motivated by sexual-orientation animus, and because none of the acts of harassment outwardly indicate that the conduct was so motivated, Plaintiff fails to present a plausible Title VII hostile work environment claim. *See, e.g., Deberry v. Hosp.*, 2016 WL 3840673, at *6 (E.D.N.Y. July 12, 2016), *aff'd sub nom. DeBerry v. Brookdale Hosp. Med. Ctr.*, 699 F. App'x 72 (2d Cir. 2017) (liability cannot be imputed to employer where plaintiff's reports to her employer were of her co-worker's "boorish conduct" and plaintiff never mentioned to her employer that the behavior she complained of was related to her race or national origin). The Court will dismiss the Complaint without prejudice and grant Plaintiff leave file an amended complaint. If Plaintiff files an amended complaint, she can also add a disparate treatment discrimination claim - which was not clearly pled in the Complaint.

## IV.     CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss (Dkt. No. 15) is **GRANTED**, the Complaint (Dkt. No. 1) is **DISMISSED without prejudice**, and Plaintiff is **GRANTED** leave of thirty (30) days to file an amended complaint. Failure to file an amended complaint in thirty (30) days will result in the Complaint being dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: August 18, 2021

Thomas J. McAvoy
Senior, U.S. District Judge